```
              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

**DAVID F. PETRANO,** and
**MARY KATHERINE DAY-**
**PETRANO,**

    Plaintiffs,
vs.                                              **Case No. 8:04-CV-2534-T-27EAJ**

**THE VESSEL MISTRESS, ET AL.,**

    Defendants.
_____ /

## AMENDED REPORT AND RECOMMENDATION

Before the court are <u>in</u> <u>rem</u> Defendant Vessel Mistress's **Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** (Dkt. 40) and <u>pro</u> <u>se</u> Plaintiffs, David F. Petrano and Mary Katherine Day-Petrano's response in opposition (Dkt. 72), as well as numerous other submissions which will be discussed <u>infra</u>. In addition, other motions of a dispositive nature are addressed.

An evidentiary hearing pursuant to Defendant Vessel Mistress's **Motion for Post-Arrest Hearing** (Dkt. 35) was held on January 18, 2005, and closing arguments were held on January 21, 2005. As will be discussed <u>infra</u>, this court issued a Report and Recommendation on February 10, 2005, recommending, <u>inter</u> <u>alia</u>, that the arrest of the Vessel Mistress be vacated (Dkt. 102). The District Judge adopted this court's Report and Recommendation on March 28, 2005 (Dkt. 121). Thereafter, due to the disclosure of false testimony

given at the evidentiary hearing, the District Judge vacated his order approving this court's Report and Recommendation and referred this matter to the undersigned for further consideration (Dkt. 123).

**Procedural History**

Pro se Plaintiffs, David F. Petrano ("Mr. Petrano") and Mary Katherine Day-Petrano ("Ms. Day-Petrano"), filed their one-count **Verified Complaint In Admiralty** (Dkt. 1) on November 19, 2004, seeking a salvage award for services allegedly performed by Plaintiffs to rescue the Vessel Mistress ("the Mistress") on September 26, 2004, during Hurricane Jeanne.  Plaintiffs filed a **Motion for Appointment of Substitute Custodian** (Dkt. 4) and a **Certification of Exigent Circumstances** (Dkt. 6) on November 19, 2004, and an **Amended Verified Complaint** (Dkt. 8) on November 22, 2004.

Based on these submissions, the undersigned granted the motion to appoint Plaintiffs as substitute custodians (Dkt. 11) and issued an **Order Directing the Issuance of the Warrant of Arrest and/or Summons** (Dkt. 12).  The **Warrant for Arrest In Rem** of the Mistress was issued on November 24, 2004 (Dkt. 13).  The warrant to arrest the Mistress was executed on December 14, 2004 (Dkt. 17). Plaintiffs filed two motions for entry of clerk's default against the Mistress on December 28, 2004 (Dkt. 26 and 29).  A **Verified Claim of Owner** of the Mistress was filed on December 29, 2004 (Dkt.

25).  Among other, numerous submissions, Plaintiffs have filed a **Second Amended Complaint in Admiralty** (Dkt. 15) and a **Third Amended Verified Complaint** (Dkt. 19).  In rem Defendant, the Mistress, has filed a **Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** (Dkt. 40) to which Plaintiffs have responded (Dkt. 72).

**I. Motion to Dissolve the Arrest of the Mistress**

On February 10, 2005, this court entered a Report and Recommendation in this action which recommended, among other things, that the arrest of the Mistress be vacated. (Dkt. 102). This court's Report and Recommendation was rendered after an evidentiary hearing held on January 18, 2005 with closing arguments presented by the parties on January 21, 2005.  On March 28, 2005, the District Judge adopted this court's Report and Recommendation (Dkt. 121).  The District Judge specifically overruled Plaintiffs' objections to the Report and Recommendation and awarded Defendant's attorney fees and costs (Dkt. 121 at 10-11).

Thereafter, on March 30, 2005, Defendants' attorney, Jacob J. Munch ("Mr. Munch"), filed his **Notice to the Court of False Testimony Regarding Theron Hutto's Qualifications** which informed the court that Theron Hutto ("Captain Hutto"), a defense witness, provided false testimony during the evidentiary hearing (Dkt. 122). The notice of false testimony filed by Mr. Munch informed the court

3

that Captain Hutto did not possess a captain's license issued by the countries of Panama, Liberia, or the Bahamas and that Captain Hutto "was not employed by Carnival Cruise Lines as the Captain of the Tropicale." (Dkt. 122 at 1-2)  In addition, counsel informed the court that Captain Hutto had a limited, rather than unlimited captain's license. (Id. at 1).[1]

After the notice of false testimony was filed, the District Judge vacated his order adopting the undersigned's Report and Recommendation, reinstated the arrest of the Mistress, and referred this matter to the undersigned for further consideration (Dkt. 123).  Subsequently, this court held a status hearing with counsel and the parties.

It is undisputed that Captain Hutto provided false testimony during the evidentiary hearing held on January 18, 2005.  He testified that he was employed by Carnival Cruise Lines as Captain of the Tropicale, that he had an unlimited master's captain's license, and that he had foreign captain's licenses in the above-mentioned foreign nations.

Accordingly, Captain Hutto's testimony is **STRICKEN** from the

---

[1] As this court observed at the status hearing, there is no indication that Defendants or their counsel knowingly elicited Captain Hutto's false testimony or otherwise share culpability for his wrongdoing.  Plaintiffs investigated Captain Hutto's background subsequent to the evidentiary hearing and brought these matters to the attention of counsel and the court which resulted in Defendants' filing a notice of false testimony. (See, e.g., Dkts. 120, 122).

record in its entirety and has not been considered in this Amended Report and Recommendation.[2] The parties do not oppose the striking of Captain Hutto's testimony in its entirety.

In addition to both Plaintiffs, the other witnesses at the evidentiary hearing whose testimony has been considered are Dianne Castelli, Mark Wallace, Lawrence Restall, and Jacky Schryver.[3]

Captain Hutto not only rendered opinions concerning the strength of the lines tying up the Mistress, he also testified that he personally tied up the vessel several hours before Plaintiffs' alleged rescue attempts during the salvage operation.

**Background Facts**

Plaintiffs reside aboard a wooden sailboat, the "Canandaigua" in Clearwater, Florida.

The Mistress is a fifty-three-foot pleasure yacht built in 1999. Her owner is in personam Defendant Comtax International. Jacky Schryver ("Mr. Schryver") is the "100% owner" of Comtax International and the Mistress. Mr. Schryver is also an in

---

[2] By striking Captain Hutto's testimony, this court does not signal that this sanction is the only remedy available for his false testimony.

[3] During the hearing, Plaintiffs offered the declarations of Lisa Penninger (Pls.' Ex. 4) and Steve Frangos (Pls.' Ex. 7) to support Plaintiffs' accounts of what transpired during and after the alleged salvage operation. Defendant objected to these declarations on the ground of hearsay. Plaintiffs offered no persuasive argument as to why the above-declarations should be admitted into evidence. Accordingly, Defendant's objection to the admission of the declarations of Lisa Penninger (Pls.' Ex. 4) and Steve Frangos (Pls.' Ex. 7) is **SUSTAINED**.

5

<u>personam</u> Defendant in this action. According to a marine survey conducted by Sea Worthy Surveying, Inc. dated December 20, 2004, the Mistress's fair market value is approximately $459,000.00, and her replacement value is approximately $1,235,000.00 (Pls.' Ex. 1 at 2).

At the relevant time periods, the Canandaigua and the Mistress were docked in adjacent slips at the same location (behind a "Mr. Submarine and Gyro Shop" restaurant) in Clearwater, Florida. The Canandaigua and the Mistress occupied the only two dock slips behind the restaurant.

On September 26, 2004, Hurricane Jeanne swept across Florida, pounding Clearwater, Florida, among other cities, with heavy rainfall and strong gusts of wind. A storm surge was also present.

Plaintiffs did not evacuate their vessel, the Canandaigua, during Hurricane Jeanne. During the early afternoon hours of September 26, 2004, they noticed that the Mistress was swaying in her berth and impacting the dock which Plaintiffs shared with the Mistress.

Plaintiffs testified that, during the height of the storm, while the wind was blowing at approximately seventy-five miles per hour, Mr. Petrano disembarked the Canandaigua and boarded the Mistress in order to inspect and secure her tie-up scheme. Mr. Petrano testified that he thought that the lines securing the Mistress were not adequate in number, and that the lines were

6

beginning to chafe. During the hearing, Ms. Day-Petrano stated that "four or five lines" were securing the Mistress during the storm. She indicated that none of the lines securing the Mistress were broken.

Mr. Petrano stated that he tightened the existing lines securing the Mistress and also added a few more lines that he found on board the Mistress. He also placed three bumpers between the sides of the Mistress and the dock to lessen the impact caused when the Mistress hit the dock.

Ms. Day-Petrano testified that she assisted Mr. Petrano in securing the Mistress by keeping vigil[4] and that it took three hours for Plaintiffs to complete the alleged salvage operation.

In their **Amended Verified Complaint**, Plaintiffs seek a salvage award of an unspecified amount for their efforts, during Hurricane Jeanne, to secure the Mistress. They filed additional pleadings itemizing the monetary relief sought.[5]

---

[4] Ms. Day-Petrano testified that she also located a ladder, life vests, chafing guards, and tie poles, tracked the storm, communicated with her husband, and provided emotional support to her husband.

[5] Plaintiffs' **Verified Complaint** and **Amended Verified Complaint** contained one count for marine salvage and simply sought a "liberal salvage award." (Dkts. 1 at 5 and 8 at 5). Plaintiffs' **Second Amended Complaint** contained three counts: the first for "reckless endangerment causing substantial risk to Plaintiffs' lives and damage to property under general maritime tort law", the second for a "salvage award in rem", and the third for a "salvage award against [the] vessel owner". (Dkt. 15 at 8-15). It was not until the **Third Amended Verified Complaint** that Plaintiffs requested a

7

Plaintiffs have the burden of proof to establish that there were reasonable grounds for the issuance of the warrant of arrest in this case. See 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc., 992 F. Supp. 1423, 1427 (M.D. Fla. 1997) ("Plaintiff has the burden under Supplemental Rule E(4)(f) to come forward with sufficient evidence to show there was probable cause for the arrest or attachment of the vessel").[6]

Defendant Mistress filed a **Motion for Post Arrest Hearing and Memorandum in Support** (Dkt. 35). Defendant Mistress argues that the allegations stated in the First Amended Complaint (Dkt. 8), the basis for the arrest, are improper under the local rules.[7] The

---

specific sum of money: two million five hundred thousand dollars for count one (reckless endangerment under general maritime tort law); four hundred and sixty thousand dollars for count two (marine salvage against the in rem Defendant Mistress); and four hundred and sixty thousand dollars for count three (marine salvage against in personam Defendants Comtax International and Mr. Schryver)(Dkt. 19 at 8-15). As will be discussed infra, Rule 15, Fed. R. Civ. P., bars the multiple complaints filed by Plaintiffs in this action without permission from the court or opposing counsel.

[6] In addition, Local Admiralty Rule 7.03(g), M.D. Fla., states: "Coincident with the filing of a claim pursuant to Supplemental Rule (E)(4)(f), and Local Admiralty Rule 7.03(f)(1), the claimant may also file a motion and proposed order directing plaintiff to show cause why the arrest should not be vacated. If the court grants the order, the court shall set a date and time for a show cause hearing. Thereafter, if the court orders the arrest to be vacated, the court shall award attorney's fees, costs, and other expenses incurred by any party as a result of the arrest."

[7] Defendant argues that the First Amended Verified Complaint failed to state the amount claimed, as required by Local Admiralty Rule 7.05(c), M.D. Fla., which states in pertinent part: "In cases of salvage, the complaint shall also state to the extent known, the value of the hull, cargo, freight, and other property salved, and

Mistress requested a post-arrest hearing "to determine if the arrest should be dissolved and costs and fees assessed against the Plaintiffs." (Dkt. 35 at 1).

In addition, the Mistress has filed a **Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** seeking an order dismissing each complaint filed by Plaintiffs, vacating the arrest of the Mistress, and awarding Defendant Mistress's attorney's fees and costs for her wrongful arrest (Dkt. 40 at 4). Defendant argues that Plaintiffs' complaints should be dismissed for violations of the Federal Rules of Civil Procedure and the Local Admiralty Rules and for failing to state a cause of action under the facts as pled by Plaintiffs.  The motion to dismiss shall be discussed infra.

### **Plaintiffs' Marine Salvage Claim**

A pure salvage claim, as compared with a contract salvage claim, has three distinct elements: "(1) a marine peril; (2) service voluntarily rendered when not required as an existing duty from a special contract; and (3) success in whole or in part, or service contributing to such success."  Flagship Marine Servs., Inc. v. Belcher Towing Co., 966 F.2d 602, 604 (11th Cir. 1992).

---

the amount claimed, the names of the principal salvors, and that the suit is instituted in their and in behalf of all other persons associated with them."

As noted by the Fifth Circuit, "Maritime salvage is as old and hoary a doctrine as may be found in the Anglo-American law. Since time immemorial, the mariner who acted voluntarily to save property from peril on the high seas has been entitled to a reward." Margate Shipping Co. v. M/V J.A. Orgeron, 143 F.3d 976, 985 (5th Cir. 1998).

The element of marine peril is described in detail in Fine v. Rockwood, 895 F. Supp. 306, 309 (S.D. Fla. 1995). The Fine court characterizes the element of marine peril as "a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance." (Id.) The Fine court further instructs:

> To determine whether a marine peril existed, the Court examines whether, at the time of the assistance rendered, the ship was in a situation that might expose her to loss or destruction. However, the danger need not be immediate or actual. All that is necessary is a reasonable apprehension of peril.

(Id.) (internal citations omitted).

A salvor's apprehension of danger must be reasonable. Faneuil Advisors, Inc. v. O/S/ Sea Hawk, 50 F.3d 88, 92 (1st Cir. 1995). Additionally, "the threat to a vessel does not need to be imminent; it must only be probable that the vessel will be damaged or destroyed without intervention." United States v. EX-USS Cabot/Dedalo, 179 F. Supp. 2d 697, 709 (S.D. Tex. 2000), rev'd on other grounds, 279 F.3d 378 (5th Cir. 2002).

In Markakis v. S.S. Volendam, 486 F. Supp. 1103, 1106 (S.D.

N.Y. 1980) the court observed: "The act of salvage need not be so dramatic and need not even consist in rendering physical assistance: standing by or escorting a distressed ship in a position to give aid if it becomes necessary, giving information on the channel to follow . . . to avoid running aground [and] carrying a message as a result of which necessary aid and equipment are forthcoming have all qualified." (citation omitted).

The evidence that the Mistress was tied to her berth, however inadequately in Plaintiffs' view, poses a heavy burden on Plaintiffs at a trial on the merits to sustain their claim to a salvage award.  This issue is entirely apart from whether the amount of the salvage claim--a substantial six figure sum claimed against each of the three defendants including the vessel--is justified by the evidence.  However, for probable cause purposes, the present record which includes testimony concerning Plaintiffs' apprehension that the Mistress would break loose from her lines during the hurricane and leave her berth is sufficient to defeat the motion to dissolve the warrant of arrest.

Accordingly and upon consideration, this court **RECOMMENDS** that:

(1) <u>in</u> <u>rem</u> Defendant Vessel Mistress's **Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** (Dkt. 40) be **DENIED** to the extent that the Arrest of the

11

Mistress should not be dissolved.

**II. Motion for Default**

Also before the court are Plaintiffs' **Motions for Entry of Default** (Dkts. 26 and 29) as well as Plaintiffs' **Motion to Strike Verified Claim of Owner** (Dkt. 31) in which Plaintiffs seek an order of default against Defendants in this matter arguing that the **Verified Claim of Owner** was filed untimely (Dkt. 25). The record reflects that the Mistress was arrested on December 14, 2004, and during the hearing, Defendants' counsel acknowledged that Defendants were noticed of the arrest on that date. Plaintiff argues that, pursuant to Local Admiralty Rule 7.03(f), M.D. Fla., the **Verified Claim of Owner** was due on or before December 27, 2004. The **Verified Claim of Owner** was filed on December 29, 2004.

Defendants argue that the **Verified Claim of Owner** was timely filed because, pursuant to Rule 6(a), Fed. R. Civ. P., weekends and court holidays are excluded from the computation of time for responsive filings. Plaintiffs' argument that the "counting rules" of the Federal Rules of Civil Procedure do not apply is unpersuasive.[8]  The **Verified Claim of Owner**, filed December 29, 2004 was filed timely.

---

[8] The court also finds that the **Verified Claim of Owner** complied with Local Admiralty Rule 7.03(f)(1), M.D. Fla., and Supplemental Rule (C)(6)(b).  Further, Plaintiffs' argument that Defendants failed to comply with Rule 7.1, Fed. R. Civ. P., is without merit as there is apparently no parent or subsidiary corporation involved in this action.

12

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Plaintiffs' **Motions for Entry of Default** (Dkts. 26 and 29) as well as Plaintiffs' **Motion to Strike Verified Claim of Owner** (Dkt. 31) be **DENIED**; and

(2) Defendant Mistress' **Motion for Extension of Time to File Claim of Owner** (Dkt. 38) be **DENIED** as moot, as the **Verified Claim of Owner** was timely filed.

### III. Defendants' Motion to Dismiss and Plaintiffs' Motion to Amend

In rem Defendant Mistress filed a **Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** (Dkt. 40). Defendant Mistress argues that the **Second Amended Compliant** and **Third Amended Complaint** should be stricken under Rule 15, Fed. R. Civ. P., because such complaints were filed without permission from the court or opposing counsel. Defendant Mistress also argues that the **First Amended Complaint** should be dismissed because it does not state a specific sum sought for the alleged salvage services (in violation of the Local Admiralty Rules). In addition, the Mistress argues that Ms. Day-Petrano should be barred from receiving a salvage award because she did not participate in the alleged salvage operation. Further, Defendant Mistress argues that the facts as plead by Plaintiffs in the **Amended Verified Complaint**

fail to state a cause of action for salvage, due to an absence of marine peril. In sum, Mistress seeks an order dismissing each complaint filed by Plaintiffs, vacating the arrest, and awarding Defendant Mistress attorney's fees and costs for the wrongful arrest (Dkt. 40 at 4).

Plaintiffs filed a **Motion for Leave to File Amended Complaints** (Dkt. 75).[9] Plaintiffs argue, <u>inter alia</u>, that they inadvertently failed to seek leave of court prior to filing the second amended complaint and third amended complaint. Ms. Day-Petrano states that Plaintiffs' failure to seek leave of court prior to filing the amended complaints is due to Ms. Day-Petrano's aforementioned disability and her need to use a "special disability assistive technology" (Dkt. 75 at 4). Plaintiffs also state that they have gained knowledge of the value of the Mistress which was previously unknown to them.

> Rule 15, Fed. R. Civ. P., states in pertinent part:
>
> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

---

[9] Plaintiffs originally filed the **Motion for Leave to File Amended Complaints** on January 10, 2005 (Dkt. 52). Plaintiffs' motion was denied by this court on January 14, 2005 due to Plaintiffs' failure to comply with Local Rule 3.01(g), M.D. Fla. (Dkt. 63).

The above rule calls for the dismissal of Plaintiff's second and third amended complaints.  Although the rule states that leave to amend shall be freely given, the Eleventh Circuit has instructed that a motion to amend may be denied on "numerous grounds" including "undue delay, undue prejudice to the defendants, and futility of the amendment." Abramson v. Gonzalez, 949 F.2d 1567, 1581 (11th Cir. 1992).

In the present case, amendment to Plaintiffs' complaint filed subsequent to Plaintiffs' **Amended Verified Complaint** (Dkt. 8) would be futile and would unduly prejudice Defendants.  However, the court finds that allowing Plaintiffs to amend their **Amended Verified Complaint** (Dkt. 8) to state the amount sought in damages for the alleged marine peril should be granted.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) **Defendant's Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** (Dkt. 40) be **GRANTED** to the extent that the complaints filed after the **Amended Verified Complaint** (Dkts. 15 and 19) be **STRICKEN**; and

(2) Plaintiffs' **Motion for Leave to File Amended Complaints** (Dkt. 75) be **GRANTED** only to the extent that Plaintiffs be permitted to include the amount claimed for the alleged salvage

operation described in the **Amended Verified Complaint** (Dkt. 8).

## Conclusion

Plaintiffs have demonstrated that probable cause existed at the time the warrant for the arrest of the Mistress was issued. Therefore, the undersigned **RECOMMENDS** that the **Motion to Dissolve the Arrest of the Mistress** (Dkt. 40) be **DENIED**.

With regards to the claims against the in personam Defendants, Comtax International and Mr. Schryver, the undersigned **RECOMMENDS** that Plaintiffs' **Motions for Entry of Default** (Dkts. 26 and 29) as well as Plaintiffs' **Motion to Strike Verified Claim of Owner** (Dkt. 31) be **DENIED** and that Defendant Mistress's **Motion for Extension of Time to File Claim of Owner** (Dkt. 38) be **DENIED** as moot, as the **Verified Claim of Owner** (Dkt. 25) was timely filed.

Further, the undersigned **RECOMMENDS** that **Defendant's Motion to Dismiss Complaints of Plaintiffs, David Petrano and Mary Katherine Day-Petrano and Dissolve the Arrest of the Vessel Mistress** (Dkt. 40) be **GRANTED** to the extent that the complaints filed after the **Amended Verified Complaint** (Dkts. 15 and 19) should be **STRICKEN** and that Plaintiffs' **Motion for Leave to File Amended Complaints** (Dkt. 75) be **GRANTED** only to the extent that Plaintiffs be permitted to

include the amount claimed for the alleged salvage operation described in the **Amended Verified Complaint** (Dkt. 8).

**Dated:** June 17, 2005.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. 636 (b)(1).

Copies to:

    Pro se Plaintiffs
    Counsel of Record
    District Court
    U.S. Marshal